JULIA A. THOMPSON, Appellee, v. EDWARD HIRT et al.,
Appellants.

MORTGAGES:   Foreclosure—Acceleration Because of Noncontemplated
1   Assessment.   The right to foreclose a purchase-money mortgage is
fully matured by the mortgagor's failure to pay a public drainage
assessment on the premises, when such assessment was not in existence
or contemplated by either party when the mortgage was executed, and
when the mortgagor has, in effect, agreed to such foreclosure in case
he fails to pay any assessment that may be levied by authority of the
state, county, or district.

MORTGAGES:   Foreclosure—Demand and Notice.   A mortgagor who
2   has agreed that the maturity of his mortgage may be accelerated in
case he fails to pay certain tax obligations on the premises is not
entitled to a demand relative to his own obligation, and a notice of
his own failure to keep the same.

*Appeal from Hancock District Court.—J. J. CLARK, Judge.*

JANUARY 16, 1923.

REHEARING DENIED MARCH 13, 1923.

ACTION to foreclose a mortgage.   The opinion sufficiently
states the facts.   The trial court found in favor of the plaintiff
and entered decree accordingly.   Defendants appeal.—*Affirmed.*

*Oliver Gorden, Tom Boynton,* and *Kingland, Dakin &
Thonn,* for appellants.

*Thompson, Loth & Lowe,* for appellee.

DE GRAFF, J.—Plaintiff seeks to foreclose a mortgage
executed by defendants pursuant to a contract of sale and deed
to certain real estate.   The legal quarrel finds its origin in the
nonpayment of a drainage assessment which
was not in existence and not within the contemplation of the parties at the time of the execution of the contract, deed or mortgage.   There
was no modification of the terms of the contract

1. MORTGAGES:
foreclosure:
acceleration
because of non-
contemplated
assessment.

during the life of the transaction. Plaintiff bottoms his right to foreclose upon certain provisions of the contract and mortgage which are essential to be stated to understand the justification of the trial court in granting plaintiff's prayer of relief.

The contract of sale bearing date of July 25, 1919 provided that the vendor (plaintiff herein) should pay all taxes assessed for the year 1919 "including such payments or installments of drainage taxes as may now have been assessed so as to be payable as part of said taxes and no others."

The vendees (defendants herein) assumed "in addition to the purchase price aforesaid all drainage taxes and installments excepting those last above named." The vendees also assumed and agreed to pay as part of the purchase price a first mortgage for $10,000 on the real estate with interest to March 1st, 1920 at which time vendees were entitled to deed and possession. The vendor agreed to furnish an abstract of title on or before 30 days prior to the time fixed for the delivery of the deed, which deed should convey the "premises in fee simple with the ordinary covenants of warranty, excepting, however, from said covenants the before mentioned taxes and drainage assessments."

The mortgage in suit contains this provision: "The party of the second part [plaintiff] shall have the right and is hereby authorized to pay off any prior incumbrance on which default has been made * * * and may pay any taxes which may at this time or any subsequent time be assessed against the land, or may redeem said land from any tax sale * * * and the lien created by this indenture * * * shall include any and all such payments with interest from the date of making same at 8 per cent. * * * This mortgage is given to secure all of said payments (as well as the consideration named herein) and may be foreclosed within ten days after making any of said payments, providing first party has not reimbursed second party any and all of said sums * * *. This mortgage is junior to a prior mortgage of $10,000 on said land. Upon failure to perform any agreement in this or said prior mortgage all notes secured hereby come due at once, and this mortgage may be foreclosed at once without demand at second party's option."

The clause in the first mortgage to which reference is made

in the second mortgage is in these words: "First parties covenant and agree * * * to pay all taxes and assessments on said premises * * * before delinquency, as also any tax and assessment that may be levied by the authority of the state, county, district, town or city in which real estate is situate."

In the light of these provisions was the remedy appropriate to the facts pleaded and proved? The record does give the reader a certain mental reaction which finds emphatic expression in the argument of appellant. The trial court sensed this when he stated in opinion: "Though the clauses in the mortgage are drastic, the parties have seen fit to agree to them with their eyes open, and are bound thereby."

In brief, this case is governed by the contract of the parties. *Johnston v. Robertson,* 179 Iowa 838. The principles of equity jurisprudence applicable to penalties and forfeitures may not be invoked. The relations of the parties are contractual and it is not the function of a court to reframe a contract for the parties thereto so that less hardship will result. Plaintiff has seen fit to hold the defendants to the stipulations. As the mortgage is written, it is written. *Moore v. Crandall,* 146 Iowa 25.

The defendants might have obviated the risk by paying the assessment and suing on the covenant of the deed. This would have determined the point in controversy and would have eliminated their present complaint. It was their privilege to test the matter in this manner but they did not choose so to do.

There can be no question that the defendants knew the taxes were due and that if they did not pay the taxes the plaintiff would exercise her right under the mortgage clause. *Taylor v. Harvey,* 90 Neb. 562 (134 N. W. 173). They knew that plaintiff expected them to pay the assessment.

This appeal presents but two questions which were in issue in the court below and which constituted the contentions of appellant in that court. These are the questions and issues presentable to this court for decision: 1. Who was liable for the payment of the drainage assessment? 2. If the defendants, was notice or demand necessary before acceleration or suit?

It appears from the record that in August 1919 plaintiff was desirous of leaving the jurisdiction of his domicile for the winter and for this reason attempted to close the transaction.

She secured the abstract of title from the first mortgagee and executed her deed on August 30, 1919. These papers were submitted to the defendants but the defendants objected to accepting the deed at that time on account of the abstract showing a certain minor defect, and an unpaid drainage installment payable with the 1919 tax. Plaintiff then prepared an escrow agreement which provided that the deed and mortgage should be executed and deposited in the bank where the original contract by its terms was performable. This instrument contained a clause accepting the abstract of title, but defendants refused to sign it. Later, however, a memorandum was written on the letter-opinion of defendants' attorney and signed by the defendant Hirt. This agreement read: "Title is accepted when abstract shows affidavit brought down on same and taxes for 1919 paid and clear from judgment liens, etc."

Plaintiff complied with these conditions and also left with the bank a formal mortgage to be executed by defendants which was later signed by them. The bank pursuant to its instructions delivered the deed and received the mortgage and did all that it was instructed to do.

In November 1919 a drainage assessment was levied against the land, but neither the plaintiff nor the defendants knew of this levy on March 1st, when the deal was consummated. At the time the deed was delivered the abstract had not been continued, and defendants insisting upon having the continuation prepared, it was so ordered and shortly thereafter a certified continuation was furnished. The abstract then showed all taxes and assessments paid and it was sent to the defendants and the deal was closed.

The subsequent drainage assessment was not paid by defendants although they received notices of the assessment through the plaintiff and through the county treasurer. The failure of the defendants to pay caused the land to be sold at tax sale and the plaintiff redeemed. Forty days thereafter (January 15, 1921) plaintiff served notice on defendants of her election to accelerate the mortgage. Later defendants tendered to plaintiff the amount of the assessment and the tender was kept good during the trial. In passing it may be said this tender

came too late. Its legal effect was an admission of liability to pay.

Defendants rely in the first place upon the covenant in the deed and contend that the doctrine of merger applies. It must be remembered that the covenant, to wit: that "the premises are free from incumbrance" was written before the assessment in question existed. The words are *in præsenti*. The intent was that the deed should speak as of that date. The covenant was broken, if at all, when it was made. There was no intent on the part of anyone to surrender the stipulations recited in the preliminary contract of sale. The grantor did everything required on his part to do. The defendants were not entitled to a warranty against a subsequent drainage assessment. Both the deed and the contract speak in the language which was understood by both parties when the contract was executed. There was no subsequent modification. Merger is a question of intent. The deed simply evidences the consummation of that part of the contract by which it was agreed that on certain conditions the legal title would be transferred to defendants. There was no merger. See *Carey v. Walker,* 172 Iowa 236; *Orr v. Moore,* 105 Iowa 420; *Cemansky v. Fitch,* 121 Iowa 186; *Cornelius v. Kromminga,* 179 Iowa 712; *Thordson v. Kruse,* 173 Iowa 268; *Laderoute v. Chale,* 9 N. D. 331 (83 N. W. 218); *Sage v. Truslow,* 88 N. Y. 240; *Naylor v. McNair,* 92 Ark. 345 (122 S. W. 662); *Gill v. Ferrin* 71 N. H. 421 (52 Atl. 558).

The other question involves the necessity of demand and notice. Under the contract of purchase the drainage assessment in question became the debt of the defendants. By the very terms of the mortgage plaintiff had the right

2. MORTGAGES: foreclosure: demand and notice.

to foreclose under the facts in this case. The failure of the defendants to reimburse the plaintiff under the clause in the mortgage in suit gave her the right to foreclose, and the failure of the defendants to pay taxes and assessments before they became delinquent gave the mortgagee the right to foreclose without demand or notice. The right to reimbursement is not dependent upon any demand or notice to the primary debtor. A party primarily liable is bound to know when his obligation matures. In the instant case the defendants did know, but were resisting on the

theory that they were not liable for the payment of the drainage assessment. It would be a peculiar rule that would require a mortgagee who has paid taxes or assessments to protect his security to notify the mortgagor and demand reimbursement from him as preliminary to an enforcement of a contractual right. *Moore v. Crandall,* 146 Iowa 25; *Doolittle v. Nurnberg,* 27 N. D. 521 (147 N. W. 400); *Ellwood v. Wolcott,* 32 Kan. 526 (4 Pac. 1056); *Farmers Sec. Bank v. Martin,* 29 N. D. 269 (150 N. W. 572).

Furthermore it may be asserted by the plaintiffs that a demand or notice would have been a useless and meaningless proceeding as the defendants claim they were not liable for the assessment. Under such circumstances what would it avail to make a demand? It would have been merely perfunctory and formal. A demand is unnecessary to the maintaining of any action where the party upon whom a demand is said to be necessary asserts in the action any claim or right, in respect to the subject of the controversy, so inconsistent with that of the adverse party that it is to be presumed that a demand would have been unavailing. See *Bunge v. Koop,* 48 N. Y. 225; *Ferguson v. Hull,* 136 Ind. 339 (36 N. E. 254); *Ferris v. Spooner,* 102 N. Y. 10 (5 N. E. 773).

Briefly stated where a demand or notice is necessarily futile it is not required. Many precedents support the conclusions reached.

We determine therefore that plaintiff exercised a right which existed by virtue of a contract and no equitable principle prevents the plaintiff from having the prayer of her petition granted. The judgment and decree of the trial court is correct and must be—*Affirmed.*

PRESTON, C. J., STEVENS and ARTHUR, JJ., concur.